## Chapin *vs.* Curtis.

By a general demurrer to a declaration, nothing is admitted but some cause
of action on some of the counts embraced therein, and the plaintiff can only
recover, to the extent of the damage he proves to the court.

A having agreed with C to carry passengers and freight from New York to
California, the latter subsequently brought an action against A, for not ful-
filling such agreement, embracing in the declaration several counts, some for
negligence, some for false warranty, and one in trover.  To this declara-
tion A demurred, and thereupon judgment was rendered against him, and
damages assessed at one hundred dollars.  A afterwards brought his action
against the defendant, who was liable with C for the payment of the freight
and passage money, claiming that, having performed said agreement on his
part, the defendant was liable for the payment of said money.  The defendant
having denied such performance and offered evidence to that effect, A claimed
that all the facts in issue had been adjudicated, except so far as the recovery
of said $100 went to prove the contrary, and that said judgment, in the former
cause, was conclusive evidence of full performance, on his part, and that the
defendant was concluded thereby.  Held, that the judgment on said demurrer
was not conclusive evidence of the full performance of said agreement on the
part of A.  Much less did it prove the full performance on his part, of the
contract, the breach of which was set out in other counts of said declaration,
that were not passed upon by said court, in rendering such judgment.

A privy by representation, as an executor, administrator, or assignee, is bound
by a judgment against his principal.

How far a surety is bound by a judgment against his principal except in
certain peculiar cases?   *Qu.*

THIS was a bill for the foreclosure of a mortgage, brought
by Merrick W. Chapin against Frederick Curtis.

The cause was brought to the superior court for Hartford
county, and referred to a committee, whose report embraced
the following facts.

The condition, annexed to the deed of mortgage, was as
follows: " Whereas the said M. W. Chapin is agent for the
steamer Hartford, which is about to sail from New York to
California, and Joseph Curtis and C. C. Randall of Hartford,
are about to send several persons passengers, and also divers
freights in said vessel, to California, and it may be to some
other place or places, and the said Frederick Curtis has
agreed, and hereby does agree, to become responsible for the

payment of the passage money of said passengers, and the freight moneys for said freights, to said Chapin; now therefore, if said Curtis and Randall, or said Frederick Curtis, shall, within six months from the sailing of said vessel, well and truly pay or cause to be paid, all and every of the sum or sums, of money, that is or may hereafter be due said Merrick W. Chapin, agent as aforesaid, and all freight money in like manner, for passage of said passengers and freight, as the said Curtis and Randall shall send or forward by said steamer Hartford, to California or elsewhere, on her now contemplated voyage, then this deed shall be void, otherwise in full force and effect, as by said deed duly executed, acknowledged and recorded, ready in court to be shown, appears."

In the month of January, 1849, the plaintiff and others were the owners of a steamer, or propeller, called the "Hartford," then lying in the port of New York, which they were then and there fitting out for a voyage from said port of New York to San Francisco, in California. The plaintiff, M. W. Chapin, was the agent of the owners, and had the care of fitting out said vessel, and of contracting for the transportation of passengers and freight, on board the same. Joseph S. Curtis and Corydon C. Randall were about taking out a number of men, and also a quantity of machinery and other freight, for the purpose of establishing the business of assaying and stamping gold, in said San Francisco. Some negotiations were had between said Chapin and said Curtis and Randall, regarding the transportation of the men, machinery, and other freight, which negotiations terminated in a contract, by which said Chapin agreed to take out and transport from said New York to San Francisco, eleven men, including said Randall, who was to pay $250 for his passage, and his berth on board said vessel; the others to pay $225, except a boy named Eben, who was to pay $100, and it was further agreed that said Chapin should receive such machinery and other freight, as said Curtis and Randall should put on board said vessel, at a stipulated price per cubic foot. The passage

money, at the prices aforesaid, amounted to the sum of $2,375, and the freight on the machinery and other articles put on board, by the said Curtis and Randall, at the prices agreed upon, amounted to the sum of $1,219.31.

At this time it was the custom, in the city of New York, (where said contract was made,) that in voyages to California, the passage money should be paid when the berths were taken, and the freight money when the freight should be delivered to the shipper. But in this case, it was agreed between the parties, that the sums for freight and passages should be considered as cash, but that six months should be allowed for payment, and that a note to that effect should be given, which, however, was not given. Said Chapin insisted that security should be given before the vessel sailed, for the payment of said passages and freights, and, in order to satisfy said claim, said Joseph S. Curtis and said Randall, applied to the defendant to furnish such security, and at their instance and request, the defendant executed and delivered the mortgage deed, described in the plaintiff's bill.

Said deed, with the condition thereto annexed, contained the entire contract of the defendant, and he had no interest in the contract of said Curtis and Randall, with the plaintiff, and was only guarantor, for their accommodation, of the payment of said freights and passage money.

Said vessel sailed from New York for San Francisco, on or about the 20th day of February, 1849. On the evening before she sailed, the parties were all together, at the Astor House, in said city of New York, where it was agreed that said vessel should sail the next morning at ten o'clock, and said Randall then said that he would be on board with his troops at that time; but he did not come on board, and after waiting for him about two hours, and he not appearing, said vessel sailed without him, and after a passage of ten months and one-half, (*viz.*, on or about the first day of January, 1850,)

arrived at said San Francisco, and delivered her passengers, and also her cargo, in a damaged state.

After the arrival of said vessel at San Francisco, and before the commencement of this suit, a demand was several times made on the said Joseph S. Curtis, by the plaintiff, for payment of said passages and freight, and the principal objection, which he made to such payment, was that a passage to Randall ought not to have been charged, or that some deduction or allowance ought to be made therein.

The bill in the present case was duly served on the defendant, and returned to the superior court, in and for the county of Hartford, at its September term, 1850, and was by said court regularly continued, and before the next succeeding term of said court, *viz*., on the 16th day of January, 1851, said Joseph S. Curtis and said Randall commenced their suit against the plaintiff, and the other owners of said vessel, for damages sustained by the plaintiffs, by reason of their non-performance of their undertaking, in the premises, by the defendants. Said writ was duly returned to the next superior court, for Hartford county, and such proceedings were afterwards had in said case, that said Curtis and Randall recovered a judgment against the owners of said vessel, for the sum of $100 damages and costs.

The defendant Curtis, by his counsel, claimed that the performance, by the owners of said vessel, of all and singular the stipulations and agreements, by them to be kept and performed, was a *condition precedent*, and that, without such performance, the plaintiff could not recover, and that, if such performance were not a condition precedent of the plaintiff's right of recovery, yet that the defendants had a right to prove in defence, that said contract had not been performed, and that, even if the said Curtis and Randall would have been estopped by said former judgment, from setting up in defence such non-performance, in case they had been defendants, yet that the defendant was not estopped thereby, being only a surety, and not a party, or privy, to said judgment. And to show that said contract had not been per-

formed, he offered evidence to prove the truth of allegations of violations of such contract by the plaintiff. contained in his answer to said bill. To the admission of this testimony the plaintiff objected on the ground, that the allegations contained in said answer had been passed upon by a court of competent jurisdiction, and were *res adjudicata;* and to sustain said objection, he offered in evidence the record aforesaid. To the admission of this record the defendant objected, on the ground among others, that the defendant was neither a party, nor privy to said record. But the committee overruled said objection, and admitted said record as conclusive upon the parties, finding that the averments and the declarations in said record, and those set up in the answer as aforesaid, were founded on one and the same contract, and not otherwise, and were identical, and thereupon excluded the evidence offered by the defendant. The committee found upon the admitted testimony in said case, that, excluding a charge of $58.06 for primage, which was not sustained by any satisfactory proof, and including $250, charged for Randall's passage, there was due from the defendant, the sum of $4,790.82. But if the court should be of opinion, upon the facts found by the committee, that said charge should be excluded, then there would be due to the plaintiff the sum of $4,478.94.

The committee further found, that all the allegations in said bill, not otherwise found in said report were true, and that the aforesaid proof offered to sustain the allegations in the answer being ruled out, said allegations were found not true. The case was reserved for the advice of this court as to what decree ought to be passed.

*Parsons* and *Fellowes* for the plaintiff.

1. The only question is, whether the evidence, offered to prove the new matter set up in the answer, was rightly excluded. This depends on the question, whether the record of the former judgment was admissible and conclusive, and this latter question depends on the question, whether the

defendant was a privy to that judgment and so concluded by it.

2. The defendant was a privy to said judgment, having made himself such by his contract, and therefore concluded by it.  *Willey* v. *Paulk*, 6 Conn. R., 74.  *De Forest* v. *Strong*, 8 Conn. R., 522.  *Davis* v. *Kingsley*, 13 Conn. R., 285–298. *Bushnell* v. *Church*, 15 Conn. R., 421.

The following decisions of the United States courts, and of the courts of other states are to the same effect:

*McLaughlin* v. *The Bank of Potomac*, 7 Howard, 220–9. *Berger* v. *Williams*, 4 McLean, 577, (12 U. S. Dig., 378.) *Parkhurst* v. *Sumner*, 23 Verm, 633. ˙ *Heard* v. *Lodge*, 20 Pick., 53.  *Masser* v. *Strickland*, 17 Serg. & R., 354.  *Evans* v. *Commonwealth*, 8 Watts, 398.   *Garber* v. *Commonwealth*, 7 Barr, 265.   7 U. S. Dig., p. 235, § 83.   5 Bligh N. S., p. 1.

3. If the former judgment be not conclusive, the result would be, that although the principal has recovered all the damage which he has sustained by reason of the non-performance of the contract, yet the surety may set up the same matter in defence, and have the amount of the damage deducted from the debt.

4. As to the performance of the contract, being a *condition precedent*, the finding of the committee, is that the passage and freight moneys became due, before the sailing of the vessel.   This finding is founded upon evidence entirely independent of any matters set up in the answer, and could not have been otherwise, if the evidence of those matters had been admitted.

*T. C. Perkins* and *Hooker* for the defendants.

Privies in contract are not estopped by that which estops the party with whom they are in privity.

I. Upon principle.  It is clear that the defendant, if bound at all, is only so as privy.  And only as privy in contract. A surety is so regarded in the case of *Willey* v. *Paulk*, 6 Conn. R., 74.  But that a privy in contract should be estop-

ped is a novel principle, and can not be supported by author- ity or reason. The principle upon which a privy in any case is estopped, is that he has succeeded to the rights upon which the estoppel operates, and so takes them with the character impressed upon them by the estoppel. 2 Smith's Lead. Ca., 516, 518, and case cited from Ad. & Ellis, 519. 1 Bouvier's Law Dict., "Estoppel." 2 Coke, 352, b. 24 Wend., 53. 1 Greenl. Ev., §§ 189, 523. Broom's Leg. Max., 316. It is shown by these authorities, that the privies embraced within the well· established principle, that judgments are bind- ing on parties and privies, are only those who succeed to the rights determined by the former adjudication. These privies are privies in blood, privies in law, privies in estate. 2 Smith's Lead. Ca., 518. There are many other privies, but they are not affected by this incident. The mistake has been in taking it for granted, that all privies are embraced in the principle that parties and privies are estopped, &c.

In every case where the privity is not one of succession, but merely of participation or mutuality, the principle does not apply. There is no more perfect privity in contract than that of two joint makers of a note; and yet, if judgment is obtained against both, without any service on one of them, that one is not concluded by the judgment. *Wood v. Wat- kinson*, 17 Conn. R., 500.

All the cases that seem to support a different view from the above, will be found, on examination, to be: 1. Cases that hold that the privity was such as to make the supposed privy substantially a party, and accordingly holden as such. 2. Cases where the judgment is merely a fact, making itself the *casus fœderis*, on which the liability of the surety arises, and where accordingly its effect on the surety depends on a mere construction of his undertaking, and not on his being a privy. 3. Cases where the principle, that a judgment binds parties and privies, has been inconsiderately taken for granted as applying to all privies of every kind. Those cases are

few, and the error is generally in giving the reason, rather than in the result.

If then Frederick Curtis, to be estopped, must have succeeded to rights affected by the former judgment, we say he has not succeeded to any rights, and especially has acquired no interest since the former judgment. 1 Ad. & Ell., 783. His rights were perfect before any litigation was commenced. Can he have lost those rights by any proceedings to which he was not a party? The only obligation that he ever assumed, was to pay Chapin for performing his contract. Has the character of the obligation become changed since, by an act to which he was not a party, in which he had no interest, and over which he had no control?

II. But it is claimed, that the authorities have settled the point against the surety. And particularly, that the law is so settled in Connecticut. 1. Examine *Willey* v. *Paulk*, 6 Conn. R., 74. This decision takes it for granted, that privies in contract are estopped like other privies. It starts with a mistaken conception of the old law. It then founds itself upon a rule of the civil law. But the very passage quoted from Pothier shows, that, by the civil law, the surety was estopped as a party, and not as a privy. The whole idea is hastily adopted from the civil law, and the rule of the civil law misapprehended in adopting it.

By the civil law, the surety was regarded as a party and had the right to appear and defend and take an appeal. Thus Pothier, vol. 2, p. 295, says, " The dependence of the obligation of a security on that of the principal debtor to which it has acceded, also causes the security to be deemed the same party with the principal debtor, in regard to all that is determined for or against the principal debtor. When a judgment has been rendered against the principal debtor, the creditor may oppose it to the security, and demand that it may be executed against him, but the security is received to appeal from this judgment, or if it is rendered in the last

resort, to contest it." See 4 Hill, 529. 3 Phil. on Ev., note 569, p. 816, 2d ed.

But the case in 6 Conn. R., 74, even if correctly decided, is not an authority in point. There a judgment had been recovered against an executor, and in a suit against his surety on the probate bond, it was held, that the surety was bound by the judgment. But the court mistake in regarding him as bound because a privy to that judgment, which he was not in any sense. He was bound only because the judgment established a claim against the executor, the non-payment of which was a breach of his bond. The non-payment of the judgment debt, was the precise default that the surety had guaranteed against. It was the precise *casus fœderis*. 4 Hill, 531.

2. All the cases, which seem to support a different view, rest upon this distinction, *viz.*, that the judgment against the principal is a mere fact against the surety, out of which grows the liability of the surety, not that the judgment has any operation against the surety as being embraced by it, either as a *quasi* party, or as a privy. They rest upon a construction of the surety's undertaking. 2 Am. Lead. Ca., 322, *et seq.* 20 Pick., 58.

3. And even these authorities hold the judgment to be only *prima facie* evidence. 10 Metc., 315. 12 Wheaton, 519, 520, 523. 2 Smith's Lead. Ca., 578. 7 Howard, 229.

4. When the undertaking of the surety is the common one of a guarantee of a contract of the principal, the cases are unanimous in support of the defendant's claim. 24 Wend., 53. 5 Martin, 193. 3 Har. & McHenry, 242. 4 Hawks, 34. 23 Verm. R., 592.

III. The contract upon which the previous adjudication was made, was not the contract which the defendant guarantied. Nor did it establish any fact upon which the defendant's liability rests. Nor was the matter in controversy one which the defendant had any interest in.

To make the case at all parallel to those under the civil

law, where it is holden that a surety is bound, the former suit should have been by Chapin against Curtis and Randall, the principal debtors, to recover the amount of freight and passage money due, and which was guarantied by the present defendants.

ELLSWORTH, J.   The plaintiff sets out in his bill, that Joseph S. Curtis and C. C. Randall agreed with him, that he should carry certain passengers and freight from the port of New York to California, in the steamer Hartford.   He avers that he has done all that he engaged to do, to complete the voyage, and is now entitled to receive the price of his services, agreeably to the contract.   For the faithful payment of this money, the defendant becomes liable with said J. S. Curtis and C. C. Randall, whether as one of the principals, or as a surety for the other two, is not entirely clear, nor in our view, is it important, as the defendant, in either character, may call on ̧the plaintiff to make good his allegations, and of course may introduce evidence to disprove them.   As principal, he must obviously have his own day in court, unaffected by proceedings against others ; and as surety, he is, as all agree, entitled to make any defence which his principals can make, and whether he can have any more or not, has been strenuously controverted and is denied ; but considered as a surety, we can not doubt that he must be let in to any equitable defence, even if performance by the plaintiff is not held to be a precedent condition ; and such is the defence of the non-performance, set up in the defendant's answer.

The defendant first denies the obligations in the bill, in a general form; he says, in his answer, " That the plaintiff has totally violated his contract," and to be more particular, " That he did not fit out, and prepare said steamer," and goes on to deny at great length, what the bill generally asserts, and then, he states wherein the plaintiff has not performed the voyage, as alleged.   This, then, was the issue before the court, and

before the committee. To establish the facts in the bill, the plaintiff offered a variety of evidence, all of which was received, and, from what afterwards transpired, was satisfactory to the mind of the committee, to prove all for which it was offered. To impair and contradict the evidence so offered, as well as to prove the truth of the allegations in the defendant's answer, the defendant offered his evidence to the contrary, and claimed to be able to establish his defence as already stated. The plaintiff objected to it, on the ground that all the facts in issue had been adjudicated between the plaintiff and defendant, and could not be again brought into dispute; that they had been all decided in the plaintiff's favor; and he read to the committee, the record of a judgment in the superior court at Hartford, in a suit of said Joseph S. Curtis and C. C. Randall, against said Chapin, in an action on the case against him, and the other owners of the steamer Hartford, as common carriers, for not carrying certain passengers and freight from the port of New York to California; there being in the declaration several counts, some for negligence, some for false warranty, and one in trover. The committee found it was the same contract in both cases. It will be observed that, to that declaration, a demurrer was put in by Mr. Chapin, and on the demurrer, judgment was rendered for the plaintiff, and damages assessed at $100. The plaintiff insists that this record conclusively proves that all the facts contained in that declaration were adjudicated, except so far as a recovery of $100 went to prove the contrary. The committee ruled in favor of the plaintiff, and after excluding all the evidence offered by the defendant, found and reported in the plaintiff's favor, that the entire freight money was due the plaintiff, amounting to the sum of $4,795.94.

Now, we are not able to see how this can be so. Did that demurrer prove that the facts contained in the declaration were not true? and it must be this, to help the plaintiff. It rather proved the contrary, if it proved anything; and for the purposes of that case, it certainly did prove the contrary.

How did it then prove full performance by the plaintiff, which was flatly denied in the declaration ? The whole effect of the judgment, on a demurrer, and the $100 damages, is that on that declaration, on some of the counts, the defendant had subjected himself to pay $100 for· not performing his contract, or for his fraudulent warranty, or his conversion of the plaintiff's goods. The admission by the demurrer, is rather that the common carriers did nothing, than that they performed anything,, much less, that they had done *every-thing*, except to the amount of $100, which damages might have been given and probably were given for the carriers' destroying a portion of the shippers' lumber in the port of New York; and so, that record furnished no evidence at all, of the performance of the voyage by the owners of the Hartford, any more than a record of a recovery, by a proprietor, who has sued his contractor for stealing and wasting the timber he furnished him, to build the proprietor's house, and a recovery for the value of the lumber destroyed, proves that the house was built, in time and manner as agreed; and there being other counts for not performing in due time and in proper manner, makes no difference, for an admission, even of the whole cause of action in such count, has no tendency to prove performance by the builder. No further action can be brought for damages, it is true, and that is all. The record of that suit is certainly consistent with the fact, that the steamer never left the port of New York. The mistake of the plaintiff's counsel, as we conceive, is this, that the damages assessed on the demurrer, disprove the truth of the declaration, as to the carriers' neglect, except as to the $100, or to put it in another form, the carriers being sued for not carrying goods as agreed, but converting them to their own use, having paid damages for their misconduct, can recover their whole freight, just as if they had fully performed, and as if this fact of full performance had been established, and adjudicated by that proceeding. It can not be so. Had Joseph S. Curtis and C. C. Randall sued Mr. Chapin on a

Chapin *v.* Curtis.

specific contract, and recovered damages, by a verdict, or on demurrer, this record would prove every material point stated in the declaration, because whatever is necessary to be found, must be held to have been proved, or admitted, on the trial. But the present case has no resemblance to that: nothing follows as a necessary, or legitimate consequence of this demurrer, but that the carriers had not kept, but had abandoned, their undertaking, and for some misconduct or other in the matter, were adjudged to pay one hundred dollars damages.

Another question has been made, which, under other circumstances, we should consider worthy of our most serious consideration, but shall pass it over, at the present time : we mean, allowing the defendant to be a surety to J. S. Curtis and C. C. Randall, would a judgment against them be conclusive upon him while he was not a party in that suit? Were he privy by representation, like an heir, executor, or assignee, it is agreed that he would be bound, but beyond that, except perhaps in a few peculiar cases, it is insisted, by the defendant's counsel, as a general principle of law, that a surety stands upon his own rights, and is not estopped by a judgment against his principal. This question has been argued on both sides, with much ability and learning, and we need only commend the briefs of counsel to the profession, in order that the distinctions made, and the books cited, may receive the attention they deserve; but situated as the case is, we do not think we are called upon to express an opinion upon the question.

For these reasons we advise the superior court to set aside the report.

In this opinion the other judges concurred.